```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
MARLENE FRIAS, as Parent and Natural Guardian of                       :
A.F., and MARLENE FRIAS, Individually, et al.,                         :
                                                                       :
                               Plaintiffs,                             :
                                                                       :
               -v-                                                     :    25 Civ. 5936 (JPC)
                                                                       :
MELISSA AVILES-RAMOS, in her official capacity as                      :    OPINION AND ORDER
Chancellor of the New York City Department of                          :
Education, and the NEW YORK CITY DEPARTMENT                            :
OF EDUCATION,                                                          :
                                                                       :
                               Defendants.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Parents of fifteen students with disabilities—both individually and on behalf of their children—initiated this action on July 18, 2025. Dkt. 1 ("Compl."). The Complaint asserts that each Plaintiff has filed a Due Process Complaint ("DPC") against the Department of Education ("DOE") alleging that (a) the DOE denied the child a free appropriate public education ("FAPE") for the 2025-2026 school year, (b) the International Institute for the Brain (commonly referred to as "iBrain") is an appropriate unilateral placement, and (c) the equities favor the parent's request for direct payment of tuition and related services. *Id.* ¶ 23. The Complaint further asserts, among other things, that the DOE failed to timely fund each child's pendency placement at iBrain. *Id.* ¶ 254. Alleging violations of federal and state law, including the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, Plaintiffs seek declarations that each child's pendency placement is at iBrain throughout the administrative proceedings related to the 2025-2026 school year, as well as injunctive relief ordering Defendants, among other things, to comply with federal law, to begin funding each child's education within thirty-five days, and to pay the

attorneys' fees and costs associated with this action.  Compl. at 42-43.

On July 22, 2025, the Court ordered Plaintiffs to show cause "why the Court should not dismiss the claims of all Plaintiffs except Marlene Frias, as parent and natural guardian of A.F., and Marlene Frias individually, without prejudice to refiling each of their claims in a separate civil action."  Dkt. 6 at 2.  Plaintiffs responded the following day, on July 23, 2025.  Dkt. 9 ("Response").  On August 22, 2025, Plaintiffs moved for a preliminary injunction and a temporary restraining order.  Dkts. 18, 19.  Defendants then filed a letter on August 25, 2025, urging the Court to deny the motion and requesting leave to file a motion to dismiss and for sanctions.  Dkt. 21.  Plaintiffs responded to Defendants' letter on August 27, 2025.  Dkt. 23.

Federal Rule of Civil Procedure 21 provides that, in case of "[m]isjoinder of parties," "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  "While the text of Federal Rule of Civil Procedure 21 does not define 'misjoinder,' the cases make it clear that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)."  *Bautista v. Banks*, No. 23 Civ. 7366 (GHW), 2023 WL 6811775, at *2 (S.D.N.Y. Oct. 16, 2023) (citation modified).  Rule 20(a)(1) permits joinder of multiple plaintiffs in one action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  "Both of these elements are required for a proper joinder of plaintiffs," *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 556 (S.D.N.Y. 2013), and courts have "broad discretion" to sever improperly joined parties from the action, *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009).

When determining whether plaintiffs assert a right to relief arising out of the "same transaction or occurrence under Rule 20," courts in this Circuit "have drawn guidance from the

use of the same [language] in Rule 13(a), which applies to compulsory counterclaims." *Bautista*, 2023 WL 6811775, at *2 (citation modified).  In the Rule 13 context, the same "transaction or occurrence" standard is met when there is a "logical relationship" between the two claims. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004).  "Although the 'logical relationship' test does not require an absolute identity of factual backgrounds, the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (citation modified).

Here, "the essential facts" of Plaintiffs' claims are not "so logically connected" that the issues should be resolved together.  Each of the fifteen students has a different individualized education program, the alleged deficiency of which prompted each student to file a different DPC.  The particular DPCs are being reviewed by separately assigned impartial hearing officers in different administrative proceedings.  And logically, each Plaintiff's entitlement to relief depends on facts unique to that Plaintiff's administrative proceeding.  Because no two Plaintiff's claims depend on the same facts, resolving one Plaintiff's claim would do nothing to resolve another Plaintiff's claim.[1]

Plaintiffs raise two arguments in seeking to avoid this commonsense conclusion.  First, they argue that "Plaintiffs' claims are logically related, mainly because they are similarly situated regarding their enforcement of pendency, and their claims are against the same Defendants." Response at 12.  Although all Plaintiffs seek enforcement of pendency rights under the IDEA, the pendency rights themselves derive from separate administrative orders issued in separate

---

[1] Indeed, the factual allegations in Plaintiffs' 277-paragraph Complaint are all separated by Plaintiff, save for a handful of conclusory allegations concerning Defendants' "systemic violations" which, as explained below, do not bear on the merits of Plaintiffs' claims of delay.  *See* Compl. ¶¶ 147-231.  Similarly, each of the twenty-three exhibits attached to the Complaint—totaling over 846 pages—relates only to a single Plaintiff, further demonstrating that Plaintiffs' claims lack overlap in essential facts.

3

proceedings. And while Defendants may be required "to continue funding whatever educational placement was last agreed upon" for each student-Plaintiff, that obligation extends only "until the relevant administrative and judicial proceedings are complete." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020) (internal quotation marks omitted). Because each Plaintiff is party to a different administrative proceeding, Defendants' obligation, if any, to fund that Plaintiff's pendency would accrue and cease at different times depending on the timing and outcome of the underlying proceeding.[2] Indeed, Plaintiffs filed their DPCs on different dates, *see, e.g.*, Compl. ¶¶ 147, 162, 177, 182, 192, 197, 217, and the Court has no reason to believe that the relevant administrative proceedings will reach simultaneous final resolutions. That Plaintiffs are in a similar procedural posture with respect to their administrative proceedings does not mean that their claims are so logically connected as to dictate that they be resolved together.

Second, Plaintiffs argue that this matter is not about the Plaintiffs' individual rights to pendency funding, but rather "Defendants' systemic failure to timely implement each Plaintiffs' pendency rights." Response at 12. Plaintiffs note that the student-Plaintiffs "all suffer from a traumatic brain injury, all attend the same private school, all receive related services from the same service providers, as required by the relevant underlying administrative order, and they were all denied pendency." *Id.* at 12 n.7. They argue that "Defendants' *modus operandi* of denying students with disabilities a FAPE, losing the underlying administrative proceedings that the Parents of those Students brought against them, and then failing to implement pendency as established by those same underlying administrative orders" is "the common thread that logically ties the Plaintiffs' claims together," such that those claims "arise out of a series of the same transactions

---

[2] The Court notes that the Complaint was filed *on the same day* as the DPC in one of the underlying administrative actions, giving the DOE no time to comply with its statutory timing obligations with respect to that Plaintiff before Plaintiffs filed this suit seeking to enforce those obligations. *See* Compl. ¶¶ 177-181.

4

or occurrences." *Id.* at 13-14. This argument is unpersuasive.

Plaintiffs cite to *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408 (S.D.N.Y. 1989), and *Ardolf v. Weber*, 332 F.R.D. 467 (S.D.N.Y. 2019), in support of their argument that Defendants' *modus operandi* is a sufficient "common thread" to tie Plaintiffs' claims together into the same series of transactions or occurrences. Response at 13-14. Both cases are readily distinguishable. In *Blesedell*, the three plaintiffs worked at the same workplace, under the same supervisor, and alleged the same form of harassment and discrimination by that individual. 708 F. Supp. at 1421-22. And in *Ardolf*, the five plaintiffs alleged abuse by the same defendant in the same specific manner, and much of the same evidence would establish the merits of the plaintiffs' "nearly-identical" claims. 332 F.R.D. at 480-81. Here, by contrast, Defendants' obligations toward each student-Plaintiff depend on separate orders entered in separate administrative proceedings, based on different records, for different children, and covering different time periods. The general allegation of widespread delay by the DOE does not alter the conclusion that each Plaintiff's entitlement to relief is rooted in a different set of "essential facts," such that resolution of one Plaintiff's pendency dispute provides no meaningful guidance as to the others.

Moreover, in *Blesedell* and *Ardolf*, proof of the alleged *modus operandi* went to the plaintiffs' burden of establishing liability: in *Blesedell*, the plaintiffs' employment discrimination claims were based on the defendant's "company-wide policy purportedly designed to discriminate against females," 708 F. Supp. at 1422, and in *Ardolf*, the defendant's *modus operandi* of abuse was evidence of his specific intent, which was an element of the plaintiffs' claims, 332 F.R.D. at 475-76. In both of those cases, therefore, proof of the common policy or *modus operandi* for one plaintiff's claim advanced the merits of another plaintiff's claim. Here, by contrast, even if the DOE often fails to meet statutorily imposed deadlines, its failure to meet the deadlines in one Plaintiff's administrative proceeding does not establish (nor is particularly relevant to) its failure

5

to meet different deadlines in a different Plaintiff's administrative proceeding. Nor does the DOE's alleged systemic failure advance the merits of Plaintiffs' claims in any other way. The mere fact that Defendants are alleged to have violated the same statutory provision as to each Plaintiff does not transform the violations into the same transaction or occurrence.

In sum, Plaintiffs' claims are improperly joined. When such is the case, "[o]n motion or on its own, the court may at any time, on just terms, . . . drop a party." Fed. R. Civ. P. 21. In exercising its "'broad discretion in determining whether to add or drop parties,'" a court "is guided by 'principles of fundamental fairness and judicial efficiency.'" *Bautista*, 2023 WL 6811775, at *4 (first quoting *Urb. v. Hurley*, 261 B.R. 587, 593 (S.D.N.Y. 2001); then quoting *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 619 (S.D.N.Y. 2015)). As discussed above, resolving one Plaintiff's claims in this action will not meaningfully assist the Court in resolving another Plaintiff's claims—each Plaintiff's claims depend entirely on facts unique to that Plaintiff. For this reason, Plaintiffs' appeal to "judicial economy," Response at 19-20, is misplaced. It is not enough that Plaintiffs intend to resolve their disputes through motion practice as opposed to proceeding to trial, *see id.* at 20; each Plaintiff's request turns on a different set of facts. Managing those individualized records within one docket would create fifteen mini-cases under a single caption. *See Bautista*, 2023 WL 6811775, at *5 ("It is extremely inefficient to litigate what are effectively two separate actions in a single lawsuit. . . . Nor will there be meaningful synergies in any motion practice: motion practice will turn on the particular factual circumstances of each set of Plaintiffs."). Moreover, at this initial stage in the litigation, which was initiated only six weeks ago, and with the relevant DPCs filed less than two months ago, Plaintiffs will not be prejudiced by being dropped from this action. *See* 7 Wright & Miller, *Federal Practice & Procedure* § 1684 (3d ed. 2025) ("When deciding between severance and dropping a party as a remedy for misjoinder, courts must conduct a prejudice analysis to determine whether dropping a party would

result in the unjust loss of claims under a statute of limitations.").

\* \* \*

Accordingly, the Court dismisses the claims of all Plaintiffs except Marlene Frias, as parent and natural guardian of A.F., and Marlene Frias individually, without prejudice to those Plaintiffs refiling each of their claims in a separate civil action. Marlene Frias shall file an amended complaint no later than September 12, 2025. In light of the dismissed claims, the Court denies Plaintiffs' motion for a preliminary injunction and a temporary restraining order without prejudice to such a motion being refiled as to only Marlene Frias's claims. Should Marlene Frias refile her motion, she should be prepared to address how she can sufficiently demonstrate an "irreparable injury in the absence of an injunction" if she fails to show that A.F.'s "placement or receipt of services [at iBrain] is at risk." *Mendez v. Banks*, 65 F.4th 56, 63-64 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024); *see, e.g.*, *Bruckauf v. Aviles-Ramos*, 25 Civ. 5679 (KPF) (S.D.N.Y. Aug. 25, 2025), Dkt. 16; *Mondano v. Banks*, No. 24 Civ. 8241 (DEH), 2025 WL 1984427, at \*2 (S.D.N.Y. July 17, 2025); *Ramos v. Banks*, Nos. 24 Civ. 5109 (LGS), 24 Civ. 5136 (LGS), 2025 WL 1455703, at \*7-8 (S.D.N.Y. May 21, 2025); *Ogunleye v. Banks*, No. 23 Civ. 9092 (VSB), 2025 WL 1078301, at \*2 (S.D.N.Y. Mar. 27, 2025); *Moonsammy v. Banks*, No. 24 Civ. 5151 (PAE), 2024 WL 3835144, at \*1 (S.D.N.Y. Aug. 14, 2024); *Thomas v. Banks*, 24 Civ. 5138 (JLR) (S.D.N.Y. Aug. 8, 2024), Dkt. 24; *Bruckauf v. Banks*, 24 Civ. 5136 (LGS) (S.D.N.Y. Aug. 1, 2024), Dkt. 25; *Ramos v. Banks*, 24 Civ. 5109 (LGS) (S.D.N.Y. Aug. 1, 2024), Dkt. 33; *Phillips v. Banks*, No. 23 Civ. 2140 (JPC) (S.D.N.Y. Apr. 20, 2023)[3]; *Crosley v. Banks*, No. 22 Civ. 7101 (MKV) (S.D.N.Y. Nov. 29, 2022), Dkt. 28; *Mendez v. Banks*, No. 22 Civ. 8397 (MKV), 2022 WL 6807537, at \*1-2 (S.D.N.Y. Oct. 11, 2022), *aff'd*, 65 F.4th 56 (2d Cir. 2023); *Hidalgo v. Porter*,

---

[3] *See Phillips v. Aviles-Ramos*, No. 23 Civ. 2140 (JPC) (JW), 2025 WL 934342, at \*4 (S.D.N.Y. Mar. 27, 2025) (describing the preliminary injunction motion denial on April 20, 2023).

No. 21 Civ. 10794 (JGK) (S.D.N.Y. Apr. 29, 2022), Dkt. 33; *Abrams v. Carranza*, No. 20 Civ. 5085 (JPO), 2020 WL 4504685, at *1 (S.D.N.Y. Aug. 5, 2020).

The Clerk of Court is respectfully directed to close Docket Number 18 and to terminate all Plaintiffs except Marlene Frias, as parent and natural guardian of A.F., and Marlene Frias individually.

SO ORDERED.

Dated: August 29, 2025
      New York, New York

                                         JOHN P. CRONAN
                                    United States District Judge